UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LANDRELL JORDAN III,<br><br>　　　　　　Defendant. | CRIMINAL NO.<br><br>MAGISTRATE NO. 23-MJ-319 (MAU) |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

The United States of America, by and through its undersigned counsel, respectfully submits this memorandum in support of its motion that Defendant Landrell Jordan III be detained pending trial pursuant to Title 18, United States Code, Section 3142(f)(1)(A) (crime of violence), (B) (offense for which the maximum sentence is life imprisonment), and (E) (felony involving a firearm). Because the defendant is charged with a violation of Section 924(c), there is a statutory presumption in favor of pretrial detention. *See* 18 U.S.C. § 3142(e)(3)(B). The government requests that the Court consider the following points and authorities, as well as any other information presented at the detention hearing, and order the defendant detained pending trial.

**FACTUAL BACKGROUND**

On May 7, 2023, at approximately 5:58 p.m., the Metropolitan Police Department responded to the 400 block of Butternut Street Northwest in Washington, D.C., for the report of an armed carjacking. The victim reported that she was parking her vehicle on Butternut Street when she observed two male suspects—later determined to be Cedae Hardy and the defendant, Landrell Jordan III—hanging out on the sidewalk. As the victim approached her residence on foot, Hardy and Jordan approached her. The offense was captured on surveillance footage.

As depicted below, Hardy approached the victim, held a gun to her chest, and demanded

her keys, asking, "Where's the car key? Where's the car key?" The defendant initially stood with his back to Hardy and the victim, apparently acting as a lookout.



The victim complied, backing away from Hardy and dropping her purse, which contained her car keys, along with her wallet, ID and payment cards, iPhone, and $40 in cash. As the victim backed away, the defendant—who was standing in her path—turned around and raised his hands.



Hardy picked up the victim's belongings, and the defendant appears to have watched the victim run away. They then drove off in her vehicle, a 2017 Toyota Rav4. The vehicle was recovered on May 31, 2023.

A review of the data on Hardy's Instagram account shows that, on May 7, 2023, the day of the carjacking, starting at 7:31 a.m., the defendant and Hardy messaged via Instagram discussing their plans to meet in person:

| Date | Time | From | To | Message |
| --- | --- | --- | --- | --- |
| 5/7/2023 | 7:31 a.m. | JORDAN | HARDY | Wya I'm at Waterfront by ana |
| 5/7/2023 | 7:35 a.m. | HARDY | JORDAN | Meet me at deanwood |
| 5/7/2023 | 7:35 a.m. | JORDAN | HARDY | Aight |
| 5/7/2023 | 7:39 a.m. | JORDAN | HARDY | Bet |
| 5/7/2023 | 7:41 a.m. | JORDAN | HARDY | I'ma call u when I'm at Dean wood |
| 5/7/2023 | 8:32 a.m. | HARDY | JORDAN | *Instagram Video Chat* |
| 5/7/2023 | 8:39 a.m. | JORDAN | HARDY | I'm on it cuzz |
| 5/7/2023 | 9:02 a.m. | JORDAN | HARDY | I'm walking down. |
| 5/7/2023 | 9:07 a.m. | JORDAN | HARDY | Wya? Cuzz |
| 5/7/2023 | 9:10 a.m. | HARDY | JORDAN | You there? |
| 5/7/2023 | 9:10 a.m. | HARDY | JORDAN | *Instagram Video Chat* |

A review of Hardy's iCloud account revealed an image of the defendant holding an unknown amount of cash. The photo is dated May 7, 2023, at approximately 6:46 p.m.—less than an hour after the Butternut Street armed carjacking. The image, included below, depicts the defendant wearing a Nike hooded sweatshirt. The sweatshirt is black and features an abstract Nike Air logo on the chest and a multicolored, patterned hood. The defendant appears to be wearing a black mask pulled up on the top of his head.



The next day, Hardy sent the defendant the below photograph via Instagram, which appears to have been taken at the same time and place as the above photograph.   It shows the defendant with his hood up and wearing a balaclava mask that covers the lower half of his face.



The photographs from Hardy's iCloud and Instagram accounts demonstrate that the defendant committed the Butternut Street carjacking with Hardy on May 7, 2023.



On May 7, 2023, at 6:59 p.m.— approximately one hour after the carjacking—Hardy posted a photograph to his Instagram account. The photograph, which is included on the next page, shows Hardy and the defendant seated in a stairwell, wearing the same clothes they wore during the carjacking. Hardy is holding a stack of United States currency, and the caption reads, "SLIGHT SHIT MY DAY NOT OVER."

5



On November 20, 2023, FBI Special Agents met with Metropolitan Police Department Detective Jose Mendoza at the FBI's Washington Field Office in Washington, D.C. The agents showed Detective Mendoza the photographs on the next page from Hardy's iCloud account.



Detective Mendoza recognized the individual immediately as a subject he had interviewed on the evening of November 17, 2023. Detective Mendoza initially identified the subject as an individual whose initials are J.H., and he pulled out his phone. Detective Mendoza proceeded to show the agents a photograph on his phone that appeared to depict the defendant and stated, "This is him." Detective Mendoza then stated that J.H. was not the subject's name and then began looking through his phone for the correct name of the subject depicted in the photographs shown. Detective Mendoza then corrected himself and identified the subject in the photographs as the defendant, Landrell Jordan.

Detective Mendoza arrested and interviewed both the defendant and J.H. on November 17,

2023.  The defendant and J.H. are alleged to have committed a spree of three armed robberies together in which they robbed four individuals of their phones at gunpoint in broad daylight; the police stopped the defendant in response to a lookout and recovered all four of the victims' phones on his person.  See **Exhibit A**.  Detective Mendoza explained that he initially said the name J.H. because J.H. is a juvenile and he had spent most of the day on the phone with the juvenile courts regarding his case.   J.H. and the defendant do not look physically similar, and Detective Mendoza explained that his initial confusion was due to the fact they were arrested together.  Detective Mendoza expressed confidence that the individual in the photographs is the defendant.

Yesterday, on November 29, 2023, the FBI executed a residential search warrant at the defendant's residence.  The FBI recovered the Nike Air sweatshirt that the defendant is depicted wearing on the surveillance footage capturing the carjacking and in the photos that Hardy took shortly after the offense.   The recovered sweatshirt is depicted below.



## RELEVANT PROCEDURAL HISTORY

On November 21, 2023, this Court issued a sealed criminal complaint and arrest warrant charging the defendant with one count of carjacking, 18 U.S.C. § 2119, and one count of using, carrying, and brandishing a firearm during and in relation to, and possessing a firearm in furtherance of, a crime of violence, 18 U.S.C. § 924(c)(1)(A)(ii). The charges arise out of a May 7, 2023, armed carjacking in Washington, D.C. At the time the criminal complaint and arrest warrant issued, the defendant was detained on unrelated charges in the Superior Court of the District of Columbia, criminal case number 2023 CF3 008494. The Superior Court charges arise out of a spree of three armed robberies the defendant allegedly committed on November 17, 2023.

On November 27, 2023, the defendant appeared in the Superior Court for a preliminary hearing. A magistrate judge found probable cause for the charged offenses but denied the government's motion for pretrial detention, ordering the defendant released on a GPS monitor.

The defendant was then arrested pursuant to the warrant issued by this Court. On November 28, 2023, the defendant had his initial appearance before this Court. The government moved for pretrial detention. *See* 18 U.S.C. § 3142(f)(1)(A), (B) & (E). A detention hearing was scheduled for Friday, December 1, 2023.

The government now respectfully submits this memorandum in support of its motion for pretrial detention.

## ARGUMENT

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142(e). In determining whether any condition or combinations of conditions will assure the

9

safety of the community, in light of any applicable presumptions, the Court weighs four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g).

In making this determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *see also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device. *See Smith*, 79 F.3d at 1210; *Williams*, 798 F. Supp. at 36.

Where, as here, the defendant is charged with a violation of Section 924(c), "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(B).

A review and understanding of the facts and circumstances in this case demonstrates that there are no conditions or combination of conditions that would ensure the safety of the community were the defendant to be released. This Court should detain the defendant pending trial.

I. **The Nature and Circumstances of these Offenses Merit Detention.**

The first factor to be considered, the nature and circumstances of the offenses charged, weighs heavily in favor of detention.

The defendant participated in an armed, coordinated attack on a stranger during daylight hours as she attempted to enter her home. The entire offense is captured on surveillance video, which reveals that the defendant was an active and engaged participant in the attack. Hardy and the defendant approached the victim together. As Hardy shoved a gun into the victim's chest, the defendant stood at the end of the path in front of her residence, blocking her escape and acting as a lookout. As the victim backed away from Hardy, the defendant turned around and raised his hands as if to stop her. The victim, who was terrified for her life, dropped her purse and ran sideways across her yard. As Hardy collected the victim's property, the defendant appears to have kept his eyes on her. Hardy and the defendant then took her property and fled in her vehicle.

Armed carjacking, like any armed robbery, is an extremely dangerous offense. As described by Judge Berman Jackson in *United States v. Lee*, "[t]he best outcome, if everything goes as planned during an armed robbery, involves a victim's being placed at risk and feeling terrified for his safety, possibly for years to come, and if things go wrong, someone—or multiple people—could be killed or seriously injured." 195 F.Supp.3d 120, 129 (D.D.C. 2016) (finding the nature and circumstances weighing heavily in favor of detention in a case where a single robbery was charged). Although the victim in this case was not physically injured, the video of the offense shows that the defendant and Hardy inflicted terror upon the victim and caused her extreme emotional distress. The defendant caused real harm to a stranger—who was just trying to go about her daily life—for his own personal gain.

The number of armed carjackings in the District of Columbia has skyrocketed this year. From the beginning of this year through November 29, 2023, there have been 911 carjackings reported in the District of Columbia. *See MPD Carjacking Dashboard*, Metro. Police Dep't, https://mpdc.dc.gov/page/carjacking (last visited Nov. 30, 2023). Of those 911 carjackings, 77%

11

reportedly involved guns. *See id.* The number of reported carjackings year to date is more than double the number reported in the same timer period last year. *See id.*

As a threshold matter, the defendant's participation in a coordinated attack that involved the use of a handgun against another person was an inherently dangerous act that placed the community at risk. *See, e.g.*, *United States v. Gassaway*, No. 21-CR-550 (RCL), 2021 WL 4206616, at *3 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public); *United States v. Howard*, No. 20-MJ-181 (BAH), 2020 WL 5642288, at *2–3 (D.D.C. Sept. 21, 2020) (making same observation); *United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a firearm "has the great potential to escalate into violence"). Here, the firearm was not merely possessed—it was actively used to assault and carjack a stranger in broad daylight, right outside of her home.

Unlawful gun possession is so problematic because the number of violent crimes committed with guns in the District continues to rise: in the past three years (between November 30, 2020, and November 30, 2023), violent crimes committed with a firearm went up by 2,594 compared to the previous three years. *See Crime Cards*, Metro. Police Dep't https://crimecards.dc.gov/all:violent%20crimes/with%20a%20gun/3:years/citywide:heat (last visited Nov. 29, 2023). Similarly, the homicide rate has skyrocketed in recent years. *See* Peter Hermann, *Homicides are falling in many big cities. In D.C., they're rising.*, Wash. Post (August 19, 2023, 9:00 a.m.), https://www.washingtonpost.com/dc-md-va/2023/08/19/dc-homicides-rising-major-cities/ ("But more than halfway through this year, killings in the District are surging toward numbers not seen in two decades"). The past three years have seen the highest homicide rates since 2003: in 2022, there were 203 homicides, and in 2021, 226 homicides. *See District Crime Data at a Glance: 2023 Year-to-Date Crime Comparison*, Metro. Police Dep't,

https://mpdc.dc.gov/page/district-crime-data-glance (last visited Nov. 30, 2023). 2023 now has the highest homicide rate in over twenty years: there have already been 250 reported homicides in 2023—a 32% increase from this time last year, and two more than the 248 reported in all of 2003. *Id.* By comparison, in 2012, there were only 88 homicides. *Id.*

But this case does not involve the possession of a handgun in isolation—it involves a coordinated assault on another person in which a handgun was shoved into her chest to facilitate an armed carjacking. "[S]uch active use of a gun in connection with or to facilitate another criminal offense . . . heighten[s] the danger to the community and other persons." *United States v. Blackson*, No. 23-CR-25 (BAH), 2023 WL 1778194, at *7 (D.D.C. Feb. 6, 2023) (Howell, J.).

## II. The Weight of the Evidence Against the Defendant is Formidable.

The second factor to be considered, the weight of the evidence, also weighs heavily in favor of detention. The government's case against the defendant is strong. The carjacking offense is captured on surveillance video, which clearly depicts the defendant's participation in a coordinated attack on the victim. Hardy took photographs of the defendant wearing the same clothes within an hour of the offense in which the defendant's face is clearly visible. The defendant was identified in the photographs by an MPD detective who interviewed him following his recent arrest for an armed robbery spree. In addition, the unique sweatshirt that the defendant wore during the offense was recently recovered during the execution of a search warrant.

While some judges in this Court have indicated that this factor should be given less weight, in *Blackson*, following a thorough review of the text of Section 3142 and decisions analyzing this factor, then–Chief Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." 2023 WL 1778194, at *8. Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors

13

are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* at *10. In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). The Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

Indeed, "if the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 WL 1778194, at *10. This is such a case, and the defendant should be detained pending trial.

### III.     The Defendant's History and Characteristics Merit Detention.

The defendant, who is soon to be 19, has not yet sustained a criminal conviction. But his lack of criminal history just one year into adulthood does not tell the whole story. On May 7, 2023, the defendant thought nothing of committing an armed carjacking in broad daylight and in full view of a surveillance camera. The government anticipates that the defendant will be indicted for an additional armed carjacking that occurred in May 2023. The defendant's recent commission of a spree of daylight armed robberies shows that the May offenses were not isolated incidents or aberrant behavior. The defendant continues to band up with others to commit violent crimes and victimize strangers with firearms. On November 17, 2023, the defendant and a juvenile co-defendant robbed four people of their phones in three separate armed incidents. The defendant has been charged in connection with those offenses in Superior Court, and a magistrate

judge found probable cause. If released, there is a real risk that the defendant will return to victimizing strangers with guns.

## IV. The Defendant Presents a Danger to Our Community.

The fourth and final factor, danger to any person or the community posed by the defendant's release, similarly weighs in favor of detention. The defendant is dangerous. As already discussed, the defendant participated in a coordinated attack on a stranger—in broad daylight, in a residential neighborhood, and in full view of a security camera—in which a gun was forced into her chest, and her car and other personal property were taken from her at gunpoint. The defendant's participation in violent, armed offenses has not abated, as he and a juvenile co-defendant are alleged to have robbed four strangers with a gun less than two weeks ago. The fact that the defendant has repeatedly and recently engaged in armed, violent offenses against strangers demonstrates that his release would pose a real risk to members of the community.

Furthermore, as noted, the Section 924(c) charge in this case gives rise to a presumption that there is no combination of conditions that can assure the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(B). The rebuttable presumption applicable here reflects Congress's common-sense judgment that the use of a firearm to facilitate a violent crime makes a defendant presumptively dangerous, and that such individuals should be detained to ensure the safety of the community. Congress's judgment about the danger posed by such offenses is further reflected by its decision to prescribe mandatory-minimum terms of imprisonment for such crimes.

The presumption shifts the burden of production to the defense—but even where the defense produces credible evidence rebutting the presumption, the presumption retains evidentiary weight and is still considered by the Court in assessing the Section 3142(g) factors. *See United States v. Dillon*, 938 F.2d 1412, 1416 (1st Cir. 1991) ("When a defendant produces such evidence,

however, the presumption does not disappear. The burden of persuasion remains on the government and the rebutted presumption retains evidentiary weight" (citations omitted)); *United States v. Ali*, 793 F. Supp. 2d 386, 388 n. 2 (D.D.C. 2011) ("[C]ircuits that have considered the issue require using the presumption as a factor even after the defendant has produced credible evidence.").

V. **There is No Condition or Combination of Conditions that Would Ensure Defendant's Compliance with Court-Ordered Release Conditions**

The defendant's conduct throughout the course of this year makes clear that he does not give a second thought to confederating with others to terrorize strangers with firearms and rob them of their personal property. He poses a demonstrated danger to the safety of others. No condition or combination of conditions of release are adequate to protect the community from the defendant. This Court should detain him pending trial.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court detain the defendant pending trial.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

Dated: November 30, 2023     By:     */s/ Paul V. Courtney*
Paul V. Courtney
D.C. Bar No. 1034252 / N.Y. Bar No. 5392337
Assistant United States Attorney
United States Attorney's Office
for the District of Columbia
601 D Street NW
Washington, D.C. 20530
(202) 252-1719
Paul.Courtney@usdoj.gov